**FILED**

J.N NOV 1 4 2007
11-14-07
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| IDA TUCKER,<br>    Complainant, | ) ) ) ) | JURY DEMANDED |
| v. | ) ) ) | 07cv6449 |
| WHELAN SECURITY OF ILLINOIS, INC.,<br>WHELAN SECURITY COMPANY, and<br>FRED ROGERS<br>    Defendants. | ) ) ) ) ) ) | JUDGE ANDERSEN<br>MAG. JUDGE KEYS |

## COMPLAINT

Plaintiff, IDA TUCKER ("TUCKER"), by her undersigned attorney, and for her complaint against Defendants, states as follows:

## NATURE OF THE CASE

1. The cause of action for Plaintiff arises under Title VII of the Civil Rights Act, 42 U.S.C. section 2000e, as amended.

2. This court has jurisdiction over this matter pursuant to 42 U.S.C. section 2000e, 28 U.S.C. Paragraph 1331, and 28 U.S.C. 1367.

## JURISDICTION AND VENUE

3.    Venue in the Northern District of Illinois is proper. The claim for relief arose in this state as required by 42 U.S.C. section 2000e.

4.    All conditions precedent have been fulfilled by Plaintiff, including the filing of a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") of the United States Government, and a receipt of a Right-to-Sue Letter from the EEOC. (**EEOC Charge and Right-to-Sue Letter attached as Exhibit A**).

## PARTIES

5.    Plaintiff is female and a resident of the State of Illinois.

6.    Defendant, WHELAN SECURITY OF ILLINOIS, INC. is duly registered to conduct business in the State of Illinois.

7.    At all times pertinent hereto, Defendant, WHELAN SECURITY OF ILLINOIS, INC. has engaged in an industry affecting commerce and has had fifteen (15) or more employees for each working day in each of the twenty (20) or more calendar weeks in the current or preceding calendar year.

8.    Defendant, WHELAN SECURITY COMPANY, is duly registered to conduct business in the State of Illinois.

2

9.    At all times pertinent hereto, Defendant,  WHELAN SECURITY COMPANY,[1] has engaged in an industry affecting commerce and has had fifteen (15) or more employees for each working day in each of the twenty (20) or more calendar weeks in the current or preceding calendar year.

10.    Defendant, FRED ROGERS ("ROGERS"), is a male and a resident of Illinois.

11.    That at all times relevant herein, ROGERS was employed by WHELAN SECURITY as a manager.

## COUNT I
## SEXUAL HARASSMENTDIRECTED AT WHELAN SECURITY COMPANY AND WHELAN SECURITY OF ILLINOIS, INC.

12.    That Plaintiff is female and a resident of the State of Illinois.

13.    That Plaintiff was hired by WHELAN SECURITY as a security officer on or about August 11, 2005.

14.    That during her employment, Plaintiff was supervised by ROGERS.

15.    That in his position as a supervisor, ROGERS was a supervisory employee under the Title VII.

---

[1]Defendants, Whelan Security of Illinois, Inc. and Whelan Security Company are jointly referred to as "WHELAN SECURITY" throughout this complaint.

3

16.    That Plaintiff was a satisfactory and conscientious employee who performed assigned tasks in an acceptable manner consistent with WHELAN SECURITY's standards and regulations.

17.    That while employed by WHELAN SECURITY, from approximately mid-June 2006 and continuing, Plaintiff was subjected to debilitating sexual harassment, inferior, miserable, and illegal terms and conditions of employment because of her sex, female.

18.    That on or around June 23, 2006, ROGERS said to Plaintiff, "I got a picture to show you." ROGERS then proceeded to show Plaintiff a picture in his cell phone that was a graphic picture of his penis.

19.    That Plaintiff was  shocked and disgusted and immediately looked away and responded, "Why didn't you warn me about that picture? I don't want to see that." ROGERS just smiled in response to Plaintiff's complaint.

20.    That after ROGERS left work that day, he telephoned Plaintiff at work and asked, "Are you still speechless about my picture that I showed you?" Plaintiff told him, "I can't talk right now." and hung up the telephone.

21.    That later that same night, ROGERS called Plaintiff again on her personal cell phone. This time, ROGERS asked Plaintiff, "What are you doing tonight? Do you

4

drink?" Plaintiff told him that she was not interested in him and does not go to bars.

22. That on or around June 30, 2006, as Plaintiff was changing in the locker room, ROGERS stood close to the locker room door for an extended period of time. Plaintiff became uncomfortable by his presence because she did not want him to see her in her underwear. Plaintiff told ROGERS that he should leave that area because she had to change her clothes. He responded, "Yeah, I better go." and walked away.

23. That later that same day, as Plaintiff was walking through the dock area, ROGERS said to Plaintiff, "I want to see you in those underwear." Plaintiff did not respond to his offensive comment and walked away as fast as she could.

24. That also on June 30, 2006, Rogers sent the same graphic picture of his penis to Plaintiff's cell phone. After Plaintiff received this picture, she tried to avoid ROGERS as much as possible. Plaintiff became very scared of him after he sent the picture of his penis to Plaintiff's cell phone.

25. That on or about August 17, 2006, Plaintiff called the human resources office and complained about ROGERS' harassment. Plaintiff was advised to call MICHAEL SELDON ("SELDON"). Plaintiff then called SELDON who directed Plaintiff to set up a meeting with ALVIN HARGROVE ("HARGROVE"). Plaintiff then set up a meeting with HARGROVE for the next day.

5

26.   That on or about August 18, 2006, Plaintiff met with HARGROVE and told him about ROGERS' sexually offensive conduct and showed him the picture of ROGERS' penis that ROGERS had sent to her cell phone.

27.   That on or about August 21, 2006, Plaintiff spoke to HARGROVE again who stated that ROGERS admitted sending the picture to Plaintiff's cell phone.

28.   That after rejecting his advances and resisting the harassment of ROGERS and in retaliation for same, another employee and ROGERS' close friend, LENNY BROWN ("BROWN"), began to ridicule and harass Plaintiff daily.

29.   That on a daily basis throughout July and August of 2006, BROWN critiqued Plaintiff's work and ridiculed her in front of other employees to make it appear as though she were an unsatisfactory employee.

30.   That however, BROWN was not Plaintiff's supervisor and his criticisms were fabricated and inappropriate.

31.   That BROWN's conduct was designed to construct a difficult and intolerable working environment for Plaintiff because she rejected ROGERS' sexual advances.

32.   That in July of 2006 and August of 2006, Plaintiff complained to ROGERS numerous times about BROWN's daily ridicule and treatment. ROGERS never

investigated Plaintiff's allegations and complaints and said harassment continued to escalate.

33. That, in fact, whenever Plaintiff complained to ROGERS about BROWN, ROGERS just yelled at Plaintiff, "You need to work the problem out with Lenny yourself!"

34. That on or around August 16, 2006, Plaintiff complained to ROGERS again about BROWN's conduct toward her. In response, ROGERS gave Plaintiff a copy of the anti-harassment policy and asked Plaintiff to sign it. Plaintiff did so.

35. That this was the first time that Plaintiff was given a copy of the anti-harassment policy.

36. That after Plaintiff signed the harassment policy, later that day, Plaintiff was issued two disciplinary notices. The first one claimed that a couple of days earlier Plaintiff had come 1 ½ hours late to a training meeting.

37. That however, BROWN and ROBERT TISCANO did not attend the training meeting at all, but were not disciplined.

38. That the second disciplinary notice was given to Plaintiff for allegedly "Failing to properly brief BROWN" before his shift started. This allegation was entirely fabricated because Plaintiff always fully briefed BROWN before his shift.

7

39.    That the disciplinary notices issued to Plaintiff were based on false accusations and fabricated to further harass and retaliate against Plaintiff for rejecting ROGERS' sexual advances and complaining about his conduct, and to construct an intolerable work environment to force Plaintiff to resign her employment.

40.    That when Plaintiff met with HARGROVE on August 18, 2006, Plaintiff also told him that BROWN and ROGERS were retaliating against her for rejecting ROGERS' sexual advances and sexually offensive conduct.

41.    That on August 19, 2006, Plaintiff asked ROGERS if she could work some overtime hours. ROGERS then asked Plaintiff, "Well what do you need to take overtime for? What is your reason for wanting to work overtime? I have to approve it."

42.    That ROGER's conduct was designed to retaliate, harass and humiliate Plaintiff.

43.    That ultimately and as a result of her complaint of sexual harassment, Plaintiff was transferred, suspended and demoted, thus placing her in a position in which she was worse off for having complained.

44.    That WHELAN SECURITY's response to Plaintiff's complaint of sexual harassment is per se negligent because said response had the effect of placing Plaintiff in an inferior position thereafter.

8

45.  That WHELAN SECURITY failed to take reasonable corrective action to prevent the harassment Plaintiff suffered as a result of ROGERS' conduct.

46.  That WHELAN SECURITY could have prevented said sex discrimination if it had implemented an effective anti-sex discrimination policy.

47.  That WHELAN SECURITY could have prevented said sexual harassment if it had implemented an effective anti-sexual harassment policy.

48.  That WHELAN SECURITY condoned sexual harassment and failed to maintain a harassment-free work environment by failing to provide adequate training, counseling, and instructions to their employees and officers, especially ROGERS, with respect to sexual harassment of female employees.

49.  That WHELAN SECURITY condoned sexual harassment and failed to maintain a harassment-free work environment by failing to employ an effective anti-sexual harassment policy with respect to their employees, especially ROGERS.

50.  That WHELAN SECURITY failed to maintain a harassment-free work environment by failing to take effective corrective action against ROGERS after WHELAN SECURITY became aware that ROGERS was engaging in unwelcome sexual conduct toward Plaintiff.

51.   That as a result of these failures by WHELAN SECURITY, ROGERS used his authority as a supervisor to force his unwelcome sexual advances and offensive conduct upon Plaintiff.

52.   That WHELAN SECURITY's treatment of Plaintiff was motivated by evil motive and intent, and was recklessly and callously indifferent to Plaintiff's federally protected rights.

53.   That the sex discrimination and sexual harassment Plaintiff was subjected to by the hands of WHELAN SECURITY, their agents, representatives and employees was persistent in nature, unwelcome, extremely offensive, humiliating, and effective in creating a hostile and intimidating work environment for Plaintiff.

54.   That said continuous and persistent sex discrimination and sexual harassment adversely affected the terms and conditions of Plaintiff's employment with WHELAN SECURITY.

55.   That as a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered the indignity of discrimination, the invasion of her right to be free from discrimination, and great humiliation which has manifested in physical illnesses and emotional stress on the relationships between Plaintiff and her friends, family, and colleagues.

10

56. That as a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered extreme mental anguish, outrage, severe anxiety about her future and her ability to support herself, shameful embarrassment among her friends, colleagues, and co-workers, damage to her reputation, disruption of her personal life, and loss of enjoyment of the ordinary pleasures of life.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, TUCKER, respectfully requests this Court to provide the following equitable and legal remedies:

a. Advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way.

b. Order a permanent injunction prohibiting Defendants from further acts of sexual discrimination and sexual harassment.

c. Award Plaintiff, TUCKER, all costs of litigation, including reasonable attorneys' fees and expert fees and expenses.

d. Award Plaintiff, TUCKER, a judgment against Defendants for reinstatement, front pay, backpay and other compensatory damages.

e. Award Plaintiff prejudgment interest.

f. Grant judgment against Defendants for punitive damages for willful and wanton conduct.

g. Enter an order requiring Defendants to implement effective steps to eliminate sex discrimination and sexual harassment from Defendants' organizations.

h. Grant such other and further relief as this Court deems just and proper.

## COUNT II
## RETALIATORY DISCIPLINE, HARASSMENT, DENIAL OF OVERTIME
## AND INFERIOR TERMS AND CONDITIONS OF EMPLOYMENT DIRECTED AT
## WHELAN SECURITY COMPANY AND WHELAN SECURITY OF ILLINOIS, INC.

57. Plaintiff incorporates the preceding paragraphs by reference here.

11

58.   That Plaintiff rejected ROGERS' sexual advances and complained about his conduct to Defendants' management employees.

59.   That thereafter, Plaintiff was subjected to inferior treatment in the various terms and conditions of employment.

60.   That as a result of Plaintiff's opposition of sexual harassment, she was issued false and unfounded disciplinary notices.

61.   That as further result of Plaintiff's opposition of sexual harassment, she was subjected to daily criticisms, harassment, ridicule and such other humiliating treatment in the hands of ROGERS and his friends and acquaintances.

62.   That as further result of Plaintiff's opposition of sexual harassment, Plaintiff was subjected to unequal and inferior treatment with respect to the assignment of lucrative overtime hours.

63.   The adverse actions stated above followed Plaintiff's protected activity within such a period of time as to raise an inference of retaliatory motivation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, TUCKER, respectfully requests this Court to provide the following equitable and legal remedies:

a.    Advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way.

b.    Order a permanent injunction prohibiting Defendants from further acts of sexual discrimination and sexual harassment.

c.    Award Plaintiff, TUCKER, all costs of litigation, including reasonable attorneys' fees and expert fees and expenses.

d.    Award Plaintiff, TUCKER, a judgment against Defendants for reinstatement, front pay, backpay and other compensatory damages.

e.    Award Plaintiff prejudgment interest.

f.    Grant judgment against Defendants for punitive damages for willful and wanton conduct.

g.    Enter an order requiring Defendants to implement effective steps to eliminate sex discrimination and sexual harassment from Defendants' organizations.

h.    Grant such other and further relief as this Court deems just and proper.

## COUNT III
## COMPLAINT OF IDA TUCKER FOR
## QUID PRO QUO SEXUAL HARASSMENT AND SEX DISCRIMINATION
## DIRECTED AT WHELAN SECURITY COMPANY AND WHELAN SECURITY OF
## ILLINOIS, INC.

64.    Plaintiff incorporates the preceding paragraphs by reference here.

65.    That ROGERS explicitly conditioned Plaintiff's enjoyment of the various terms, conditions, and benefits of employment on her submission to his sexual advances. Such terms and conditions of employment include her employment itself and other conditions.

66.    That R & O's conduct in subjecting Plaintiff to inferior terms and conditions of

employment amounts to quid pro quo sexual harassment in violation of the law.

67.    That as a further result of said harassing conduct, Plaintiff was adversely affected by the various tangible employment actions that she suffered at the hands of R & O and its agents.

68.    That Defendants are strictly liable for the conduct complained of as the Plaintiff suffered adverse employment action resulting directly from the harassment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, TUCKER, respectfully requests this Court to provide the following equitable and legal remedies:

a.    Advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way.

b.    Order a permanent injunction prohibiting Defendants from further acts of sexual discrimination and sexual harassment.

c.    Award Plaintiff, TUCKER, all costs of litigation, including reasonable attorneys' fees and expert fees and expenses.

d.    Award Plaintiff, TUCKER, a judgment against Defendants for reinstatement, front pay, backpay and other compensatory damages.

e.    Award Plaintiff prejudgment interest.

f.    Grant judgment against Defendants for punitive damages for willful and wanton conduct.

g.    Enter an order requiring Defendants to implement effective steps to eliminate sex discrimination and sexual harassment from Defendants' organizations.

h.    Grant such other and further relief as this Court deems just and proper.

14

## COUNT IV
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## DIRECTED AT FRED ROGERS

69.    Plaintiff incorporates the preceding paragraphs by reference here.

70.    That on or around June 23, 2006, ROGERS said to Plaintiff, "I got a picture to show
you." ROGERS then proceeded to show Plaintiff a picture in his cell phone that was
a graphic picture of his penis.

71.    That Plaintiff was shocked and disgusted and immediately looked away and
responded, "Why didn't you warn me about that picture? I don't want to see that."
ROGERS just smiled in response to Plaintiff's complaint.

72.    That after ROGERS left work that day, he telephoned Plaintiff at work and asked,
"Are you still speechless about my picture that I showed you?" Plaintiff told him, "I
can't talk right now." and hung up the telephone.

73.    That later that same night, ROGERS called Plaintiff again on her personal cell
phone. This time, ROGERS asked Plaintiff, "What are you doing tonight? Do you
drink?" Plaintiff told him that she was not interested in him and does not go to bars.

74.    That on or around June 30, 2006, as Plaintiff was changing in the locker room,
ROGERS stood close to the locker room door for an extended period of time.
Plaintiff became uncomfortable by his presence because she did not want him to see

her in her underwear. Plaintiff told ROGERS that he should leave that area because she had to change her clothes. He responded, "Yeah, I better go." and walked away.

75.    That later that same day, as Plaintiff was walking through the dock area, ROGERS said to Plaintiff, "I want to see you in those underwear." Plaintiff did not respond to his offensive comment and walked away as fast as she could.

76.    That also on June 30, 2006, Rogers sent the same graphic picture of his penis to Plaintiff's cell phone. After Plaintiff received this picture, she tried to avoid ROGERS as much as possible. Plaintiff became very scared of him after he sent the picture of his penis to Plaintiff's cell phone.

77.    That after rejecting his advances and resisting the harassment of ROGERS and in retaliation for same, another employee and ROGERS' close friend, BROWN, began to ridicule and harass Plaintiff daily.

78.    That on a daily basis throughout July and August of 2006, BROWN critiqued Plaintiff's work and ridiculed her in front of other employees to make it appear as though she were an unsatisfactory employee.

79.    That however, BROWN was not Plaintiff's supervisor and his criticisms were fabricated and inappropriate.

80. That BROWN's conduct was designed to construct a difficult and intolerable working environment for Plaintiff.

81. That in July of 2006 and August of 2006, Plaintiff complained to ROGERS numerous times about BROWN's daily ridicule and treatment. ROGERS never investigated Plaintiff's allegations and complaints and said harassment continued to escalate.

82. That, in fact, whenever Plaintiff complained to ROGERS about BROWN, ROGERS just yelled at Plaintiff, "You need to work the problem out with Lenny yourself!"

83. That ROGERS intentionally inflicted severe emotional distress and mental anguish on TUCKER.

84. That Defendant has acted willfully and intentionally in that he knew that TUCKER would suffer and did suffered extreme emotional and physical distress as a result of the Defendant's extreme, oppressive and unreasonable conduct.

85. That Defendants' conduct toward TUCKER amounts to intentional infliction of emotional distress because said conduct was extreme and outrageous and beyond the bounds of moral decency that no reasonable person could be expected to endure it.

86. That as a result, TUCKER has suffered and continues to suffer severe emotional

17

distress, fright, physical illnesses, mental anguish, humiliation, and embarrassment.

### PRAYER FOR RELIEF

WHEREFORE, TUCKER respectfully requests that the Court provide the following equitable and legal relief:

a.   Award TUCKER a judgment against ROGERS for compensatory and punitive damages.

b.   Enter an order granting TUCKER reasonable compensation for the severe emotional distress, fright, humiliation, embarrassment, and physical illnesses suffered by TUCKER.

c.   Grant TUCKER such other and further relief as this court deems just and proper.

Respectfully Submitted,
Ida Tucker

By: _____
One of Plaintiff's Attorneys

Uche O. Asonye - 6209522
Mark Pando - 6283683
ASONYE & ASSOCIATES
11 South LaSalle Street, Suite 2140
Chicago, Illinois 60603
(312) 795-9110
(312) 795-9114 (Fax)

## JURY DEMAND

NOW COMES the Plaintiff by her undersigned attorney, and demands a trial by jury

in the above entitled cause of action.


Respectfully Submitted,
Ida Tucker,

By: _____
One of Plaintiff's Attorneys


Uche O. Asonye - 06209522
Mark Pando - 6283683
Asonye & Associates
11 South LaSalle Street, Suite 2140
Chicago, Illinois 60603
(312) 795-9110
(312) 795-9114 (f)

EEOC Form 164-B (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To: **Ida Tucker**
    **16781 Torrence**
    **Lansing, IL 60438**

From: **Chicago District Office**
      **500 West Madison St**
      **Suite 2800**
      **Chicago, IL 60661**

**CERTIFIED MAIL 7003 3110 0004 0947 3252**

☐ *On behalf of person(s) aggrieved whose identity is*
  *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 21B-2007-00122 | **Armernola P. Smith,**<br>**State & Local Coordinator** | **(312) 886-5973** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

☒ More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u>** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*John P. Rowe*                                         11/02/07

_____                          _____
**John P. Rowe,**                                       *(Date Mailed)*
**District Director**

Enclosures(s)

cc:     **WHELAN SECURITY CO**
        **10 S Riverside Plaza**
        **Chicago, IL 60606**



EXHIBIT

**A**

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

27W0919-08

| | AGENCY | CHARGE NUMBER |
|---|---|---|
| ☐ | FEPA | 2007CF0996 |
| ☒ | EEOC | |

Illinois Department of Human Rights

State or local Agency, if any
and EEOC

| NAME(Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Ms. Ida Tucker | 708-955-9580 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 16761 Torrence Avenue | Lansing, IL 60438 | 8/30/1970 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| Whelan Security Co. | 15+ | 312 795-1090 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 10 South Riverside, Plz. | Chicago, IL 60806 | Cook |

| NAME | | TELEPHONE NUMBER (Include Area Code) |
|---|---|---|
| N/A | | N/A |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| N/A | N/A | N/A |

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER (Specify)

DATE DISCRIMINATION TOOK PLACE EARLIEST

June 2006 — August 2006

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired by Whelan Security Co. on or around August 11, 2005. From mid-June of 2006 until July of 2006, I was subjected to sexual harassment. Despite multiple complaints, the harassment continued. In July and August of 2006, I was also retaliated against for complaining about sexual harassment in violation of Title VII of the Civil Rights Act of 1964, as amended.

DEPT. OF HUMAN RIGHTS
INTAKE UNIT

SEP 19 2006

RECEIVED

BY_____

OFFICIAL SEAL
ADAM F HENDRICKS
Notary Public - State of Illinois
My Commission Expires Jul 20, 2009

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY - (When necessary for State and Local Requirements)

Dennis T. Ifz

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

I declare under penalty of perjury that the foregoing is true and correct.

Date 9-18-06   Charging Party (Signature)

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(Day, month, and year)   18 September 2006

EEOC FORM 5 (REV. 2/01)

<u>**IDA TUCKER V. WHELAN SECURITY CO.**</u>
**Page 2 of charge:**

I.    A.    **ISSUE/BASIS**
1.    Sexually harassed from approximately mid-June of 2006, and continuing until July of 2006.

B.    **PRIMA FACIE ALLEGATIONS**
1.    I was hired by Respondent, WHELAN SECURITY CO., as a security officer on or about August 11, 2005. During my employment, I was discriminated against because of my sex, female. I was also subjected to sexual harassment by FRED ROGERS ("ROGERS"), my supervisor. Respondent has failed to take effective corrective action in a timely manner, and has failed to prevent the sexual harassment.

2.    I believe that I have been discriminated against because of my sex, female, and sexually harassed in that:

a.    I was a satisfactory and conscientious employee.

b.    On or around June 23, 2006, ROGERS said to me, "I got a picture to show you." He did not tell me anything else. He proceeded to show me a picture in his cell phone that was a graphic picture of his penis.

c.    I was shocked and disgusted when he showed me the picture of his penis. I immediately looked away and responded, "Why didn't you warn me about that picture? I don't want to see that." ROGERS just smiled in response to my complaint.

d.    After ROGERS left work that same day, he called the building and asked me, "Are you still speechless about my picture that I showed you?" I told him, "I can't talk right now." and I hung up the telephone.

e.    Later that same night, ROGERS called me again on my personal cell phone. This time ROGERS asked me, "What are you doing tonight? Do you drink?" I told him, "I am not interested in him and that I do not go out to bars."

_____
Complainant's Signature

9-18-06
Date

## IDA TUCKER V. WHELAN SECURITY CO.
Page 3 of charge:

f.   On or around June 30, 2006, as I was changing in the locker room, ROGERS stood close to the locker room door for an extended period of time. This made me uncomfortable because I did not want him to see me in my underwear. I told ROGERS that he should leave that area because I had to change my clothes. He responded, "Yeah, I better go." and walked away.

g.   Later that same day, as I was walking through the dock area, ROGERS said to me, "I want to see you in those underwear." I did not respond to his offensive comment and walked away as fast as I could.

h.   Also on June 30, 2006, Rogers sent the same graphic picture of his penis to my cell phone. After I received this picture, I tried to avoid ROGERS as much as possible. I was very scared of him after he sent the picture of his penis to my cell phone.

i.   On or about August 17, 2006, I called the human resources office and complained about ROGERS' harassment. They advised me to call MICHAEL SELDON ("SELDON"). I called SELDON advised me to set up a meeting with ALVIN HARGROVE ("HARGROVE"). I called HARGROVE and we set up a meeting for the next day.

j.   On or about August 18, 2006, I met with HARGROVE and told him about ROGERS' sexually offensive conduct and I showed him the picture of ROGERS' penis that ROGERS had sent me.

k.   On or about August 21, 2006, I talked to HARGROVE again. He told me that ROGERS admitted that he sent a picture of his penis to my cell phone.

_____        4-18-06
Complainant's Signature              Date

## IDA TUCKER V. WHELAN SECURITY CO.
### Page 4 of charge:

II    A.    ISSUE/BASIS

    1.    Retaliated against for complaining about sexual harassment and rejecting supervisor's sexual advances.

    B.    PRIMA FACIE ALLEGATIONS

    1.    I believe that I have been retaliated against for having openly opposed discrimination.

        a.    I first complained to ROGERS on June 23, 2006, when he showed me the picture of his penis. I asked him, "Why didn't you warn me about that picture? I don't want to see that."

        b.    That same night when ROGERS called my personal cell phone I told him that I was not interested in him and that I did not go out to the bars.

        c.    After I began to avoid ROGERS, another employee, and ROGERS' close friend, LENNY BROWN ("BROWN"), began to ridicule and harass me daily.

        d.    On a daily basis throughout July and August of 2006, BROWN critiqued my work and ridiculed me in front of other employees so it appeared as though I was an unsatisfactory employee. However, BROWN was not my supervisor and his critiques were fabricated and inappropriate. I believed that BROWN was only trying to make my work environment difficult because I had rejected ROGERS' sexual advances.

        e.    In July of 2006 and August of 2006, I complained to ROGERS numerous times about BROWN's daily ridicule and treatment. ROGERS never investigated my complaints regarding BROWN's conduct. In fact, whenever I complained to ROGERS about BROWN, ROGERS just yelled at me, "You need to work the problem out with Lenny yourself!"

Complainant's Signature                    9-18-04
                                               Date

## IDA TUCKER V. WHELAN SECURITY CO.
### Page 5 of charge:

f.   On or around August 16, 2006, I complained to ROGERS again about BROWN's conduct toward me. ROGERS gave me a copy of the anti-harassment policy and asked me to sign it. I signed and dated the policy. This was the first time that I had received a copy of the anti-harassment policy.

g.   After I signed the harassment policy, and later that same day, I was written up twice. First, I was written up because a couple days earlier, I had come 1 ½ hours late to a training meeting. However, BROWN and ROBERT TISCANO ("TISCANO") never attended the training meeting and they were not written up. Second, I was written up for "Failing to properly brief BROWN" before his shift started. I always fully briefed BROWN before his shift and I believe this write-up was meant to harass me.

h.   When I met with HARGROVE on August 18, 2006, I also told him that BROWN and ROGERS were retaliating against me for rejecting ROGERS sexual advances and sexually offensive conduct.

i.   On August 19, 2006 I asked ROGERS if I could work some overtime hours. ROGERS then asked me, "Well what do you need to take overtime for? What is your reason for wanting to work overtime? I have to approve it." This should not have been his concern, ROGERS was trying to get me upset and to harass me.

j.   The adverse actions stated above followed my protected activity within such a period of time as to raise an inference of retaliatory motivation.

Complainant's Signature                    9-18-06
                                            Date

Subscribed and sworn to before me this

18th day of September, 2006.

Notary Public

OFFICIAL SEAL
ADAM F HENDRICKS
Notary Public - State of Illinois
My Commission Expires Jul 20, 2009

## FILING SUIT IN COURT OF COMPETENT JURISDICTION

### PRIVATE SUIT RIGHTS:

This issuance of this Notice of Right to Sue ends EEOC's process with respect to your charge. You may file a lawsuit against th respondent named in your charge within 90 days from the date you receive this Notice. Therefore you should keep a record of th date. Once this 90-day period is over, your right to sue is lost. If you intend to consult an attorney, you should do so as soon  possible. Furthermore, in order to avoid any question that you did not act in a timely manner, if you intend to sue on your ow behalf, your suit should be filed well in advance of the expiration of the 90-day period.

You may file your lawsuit in a court of competent jurisdiction. Filing this Notice is not sufficient. A court complaint must conta a short statement of the facts of your case which shows that you are entitled to relief. Generally, suits are brought in the state whe the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where th employment would have been, or where the respondent has its main office.

You may contact EEOC if you have any questions about your rights, including advice on which court can hear your case, or if ye need to inspect and copy information contained in the case file.

A lawsuit against a private employer is generally filed in the U.S. District Court.

A lawsuit under Title VII of the Civil Rights Act of 1964, as amended, against a State agency or a political subdivision of th State is also generally filed in the U.S. District Court.

_ .wever, a lawsuit under the Age Discrimination in Employment Act or the Americans with Disabilities Act or, probably, the Equ Pay Act against a State instrumentality (an agency directly funded and controlled by the State) can only be filed in a State cou

A lawsuit under the Age Discrimination in Employment Act or the Americans with Disabilities Act or the Equal Pay Act agair a political subdivision of the State, such as municipalities and counties, may be filed in the U.S. District Court.

For a list of U.S. District Courts, please see reverse side.

IF THE FIRST THREE CHARACTERS OF YOUR EEOC CHARGE NUMBER ARE "21B" AND YOUR CHARGE WA INVESTIGATED BY THE ILLINOIS DEPARTMENT OF HUMAN RIGHTS (IDHR), REQUEST FOR REVIEWING AN COPYING DOCUMENTS FROM YOUR FILE MUST BE DIRECTED TO IDHR.

### ATTORNEY REPRESENTATION:

If you cannot afford or have been unable to obtain a lawyer to represent you, the court having jurisdiction in your case may, assi you in obtaining a lawyer. If you plan to ask the court to help you obtain a lawyer, you must make this request of the court in th form and manner it requires. Your request to the court should be made well before the end of the 90-day period mentioned abov A request for representation does not relieve you of the obligation to file a lawsuit within this 90-day period.

### DESTRUCTION OF FILE:

jou file suit, you or your attorney should forward a copy of your court complaint to this office. Your file will then be preserve Unless you have notified us that you have filed suit, your charge file could be destroyed as early as six months after the date of tl Notice of Right to Sue.

IF YOU FILE SUIT, YOU OR YOUR ATTORNEY SHOULD NOTIFY THIS OFFICE WHEN THE LAWSUIT I

P. 1

```
TRANSMISSION REPORT
```

(WED) NOV 14 2007  8:13

| User/Account | : 87 |
| DESTINATION | : scott |
| ADDRESS | : Scott@aa-law.com |

| DOCUMENT# | : 7600000-853 |
| TIME STORED | : NOV 14  8:12 |
| TX START | : NOV 14  8:13 |
| DURATION | : 5sec |
| COM. MODE | : PC-M |

| PAGES | : 5page |
| RESULT | : OK |

EEOC Form 161-B (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE (*ISSUED ON REQUEST*)

To:  Kiena Jordan
     320 Richards Street
     Joliet, IL 60433

From:  Chicago District Office
       500 West Madison St
       Suite 2800
       Chicago, IL 60661

CERTIFIED MAIL 7003 3110 0004 0947 3255

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
| | Armenolla P. Smith, | |
| 21B-2007-00008 | State & Local Coordinator | (312) 886-5973 |

(*See also the additional information enclosed with this form.*)

NOTICE TO THE PERSON AGGRIEVED:

Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA): This is your Notice of Right to Sue, issued
under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or
the ADA must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice; or your right to sue based on this
charge will be lost. (The time limit for filing suit based on a state claim may be different.)

☒ More than 180 days have passed since the filing of this charge.