IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IDA TUCKER, | ) | |
|     Plaintiff, | ) | JURY DEMANDED |
| | ) | |
| v. | ) | CASE #: 07 C 6449 |
| | ) | JUDGE: Andersen |
| WHELAN SECURITY OF ILLINOIS, INC., | ) | MAGISTRATE JUDGE: Keys |
| and WHELAN SECURITY COMPANY, and | ) | |
| FRED ROGERS, | ) | |
|     Defendants. | ) | |

**<u>FIRST AMENDED COMPLAINT</u>**

Plaintiff, IDA TUCKER ("TUCKER"), by her undersigned attorney, and for her complaint against Defendants, states as follows:

**<u>NATURE OF THE CASE</u>**

1. The cause of action for Plaintiff arises under Title VII of the Civil Rights Act, 42 U.S.C. section 2000e, as amended.

2. This court has jurisdiction over this matter pursuant to 42 U.S.C. section 2000e, 28 U.S.C. Paragraph 1331, and 28 U.S.C. 1367.

1

## JURISDICTION AND VENUE

3. Venue in the Northern District of Illinois is proper. The claim for relief arose in this state as required by 42 U.S.C. section 2000e.

4. All conditions precedent have been fulfilled by Plaintiff, including the filing of a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") of the United States Government, and a receipt of a Right-to-Sue Letter from the EEOC. (**EEOC Charge and Right-to-Sue Letter attached as Exhibit A**).

## PARTIES

5. Plaintiff is female and a resident of the State of Illinois.

6. Defendant, WHELAN SECURITY OF ILLINOIS, INC. is duly registered to conduct business in the State of Illinois.

7. At all times pertinent hereto, Defendant, WHELAN SECURITY OF ILLINOIS, INC. has engaged in an industry affecting commerce and has had fifteen (15) or more employees for each working day in each of the twenty (20) or more calendar weeks in the current or preceding calendar year.

8. Defendant, WHELAN SECURITY COMPANY, is duly registered to conduct business in the State of Illinois.

9. At all times pertinent hereto, Defendant, WHELAN SECURITY COMPANY,[1] has engaged in an industry affecting commerce and has had fifteen (15) or more employees for each working day in each of the twenty (20) or more calendar weeks in the current or preceding calendar year.

10. Defendant, FRED ROGERS ("ROGERS"), is a male and a resident of Illinois.

11. That at all times relevant herein, ROGERS was employed by WHELAN SECURITY as a manager.

## COUNT I
## SEXUAL HARASSMENTDIRECTED AT WHELAN SECURITY COMPANY AND WHELAN SECURITY OF ILLINOIS, INC.

12. That Plaintiff is female and a resident of the State of Illinois.

13. That Plaintiff was hired by WHELAN SECURITY as a security officer on or about August 11, 2005.

14. That during her employment, Plaintiff was supervised by ROGERS.

15. That in his position as a supervisor, ROGERS was a supervisory employee under Title VII.

---

[1] Defendants, Whelan Security of Illinois, Inc. and Whelan Security Company are jointly referred to as "WHELAN SECURITY" throughout this complaint.

16. That Plaintiff was a satisfactory and conscientious employee who performed assigned tasks in an acceptable manner consistent with WHELAN SECURITY's standards and regulations.

17. That while employed by WHELAN SECURITY, from approximately mid-June 2006 and continuing, Plaintiff was subjected to debilitating sexual harassment, inferior, miserable, and illegal terms and conditions of employment because of her sex, female.

18. That on or around June 23, 2006, ROGERS said to Plaintiff, "I got a picture to show you." ROGERS then proceeded to show Plaintiff a picture in his cell phone that was a graphic picture of his penis.

19. That Plaintiff was shocked and disgusted and immediately looked away and responded, "Why didn't you warn me about that picture? I don't want to see that." ROGERS just smiled in response to Plaintiff's complaint.

20. That after ROGERS left work that day, he telephoned Plaintiff at work and asked, "Are you still speechless about my picture that I showed you?" Plaintiff told him, "I can't talk right now." and hung up the telephone.

21. That later that same night, ROGERS called Plaintiff again on her personal cell phone. This time, ROGERS asked Plaintiff, "What are you doing tonight? Do you

drink?" Plaintiff told him that she was not interested in him and does not go to bars.

22. That on or around June 30, 2006, as Plaintiff was changing in the locker room, ROGERS stood close to the locker room door for an extended period of time. Plaintiff became uncomfortable by his presence because she did not want him to see her in her underwear. Plaintiff told ROGERS that he should leave that area because she had to change her clothes. He responded, "Yeah, I better go," and walked away.

23. That later that same day, as Plaintiff was walking through the dock area, ROGERS said to Plaintiff, "I want to see you in those underwear." Plaintiff did not respond to his offensive comment and walked away as fast as she could.

24. That also on June 30, 2006, Rogers sent the same graphic picture of his penis to Plaintiff's cell phone. After Plaintiff received this picture, she tried to avoid ROGERS as much as possible. Plaintiff became very scared of him after he sent the picture of his penis to Plaintiff's cell phone.

25. That on or about August 17, 2006, Plaintiff called the human resources office and complained about ROGERS' harassment. Plaintiff was advised to call MICHAEL SELDIN ("SELDIN"). Plaintiff then called SELDIN who directed Plaintiff to set up a meeting with ALVIN HARGROVE ("HARGROVE"). Plaintiff then set up a meeting with HARGROVE for the next day.

26. That on or about August 18, 2006, Plaintiff met with HARGROVE and told him about ROGERS' sexually offensive conduct and showed him the picture of ROGERS' penis that ROGERS had sent to her cell phone.

27. That on or about August 21, 2006, Plaintiff spoke to HARGROVE again who stated that ROGERS admitted sending the picture to Plaintiff's cell phone.

28. That after rejecting his advances and resisting the harassment of ROGERS and in retaliation for same, another employee and ROGERS' close friend, LENNY BROWN ("BROWN"), began to ridicule and harass Plaintiff daily.

29. That on a daily basis throughout July and August of 2006, BROWN critiqued Plaintiff's work and ridiculed her in front of other employees to make it appear as though she were an unsatisfactory employee.

30. That however, BROWN was not Plaintiff's supervisor and his criticisms were fabricated and inappropriate.

31. That BROWN's conduct was designed to construct a difficult and intolerable working environment for Plaintiff because she rejected ROGERS' sexual advances.

32. That in July of 2006 and August of 2006, Plaintiff complained to ROGERS numerous times about BROWN's daily ridicule and treatment. ROGERS never

investigated Plaintiff's allegations and complaints and said harassment continued to escalate.

33. That, in fact, whenever Plaintiff complained to ROGERS about BROWN, ROGERS just yelled at Plaintiff, "You need to work the problem out with Lenny yourself!"

34. That on or around August 16, 2006, Plaintiff complained to ROGERS again about BROWN's conduct toward her. In response, ROGERS gave Plaintiff a copy of the anti-harassment policy and asked Plaintiff to sign it. Plaintiff did so.

35. That this was the first time that Plaintiff was given a copy of the anti-harassment policy.

36. That after Plaintiff signed the harassment policy, later that day, Plaintiff was issued two disciplinary notices. The first one claimed that a couple of days earlier Plaintiff had come 1 ½ hours late to a training meeting.

37. That however, BROWN and ROBERT TOSCANO did not attend the training meeting at all, but were not disciplined.

38. That the second disciplinary notice was given to Plaintiff for allegedly "Failing to properly brief BROWN" before his shift started. This allegation was entirely fabricated because Plaintiff always fully briefed BROWN before his shift.

39. That the disciplinary notices issued to Plaintiff were based on false accusations and fabricated to further harass and retaliate against Plaintiff for rejecting ROGERS' sexual advances and complaining about his conduct, and to construct an intolerable work environment to force Plaintiff to resign her employment.

40. That when Plaintiff met with HARGROVE on August 18, 2006, Plaintiff also told him that BROWN and ROGERS were retaliating against her for rejecting ROGERS' sexual advances and sexually offensive conduct.

41. That on August 19, 2006, Plaintiff asked ROGERS if she could work some overtime hours. ROGERS th

42. en asked Plaintiff, "Well what do you need to take overtime for? What is your reason for wanting to work overtime? I have to approve it."

43. That ROGER's conduct was designed to retaliate, harass and humiliate Plaintiff.

44. That ultimately and as a result of her complaint of sexual harassment, Plaintiff was transferred, suspended and demoted, thus placing her in a position in which she was worse off for having complained.

45. That WHELAN SECURITY's response to Plaintiff's complaint of sexual harassment is per se negligent because said response had the effect of placing Plaintiff in an

inferior position thereafter.

46. That WHELAN SECURITY failed to take reasonable corrective action to prevent the harassment Plaintiff suffered as a result of ROGERS' conduct.

47. That WHELAN SECURITY could have prevented said sex discrimination if it had implemented an effective anti-sex discrimination policy.

48. That WHELAN SECURITY could have prevented said sexual harassment if it had implemented an effective anti-sexual harassment policy.

49. That WHELAN SECURITY condoned sexual harassment and failed to maintain a harassment-free work environment by failing to provide adequate training, counseling, and instructions to their employees and officers, especially ROGERS, with respect to sexual harassment of female employees.

50. That WHELAN SECURITY condoned sexual harassment and failed to maintain a harassment-free work environment by failing to employ an effective anti-sexual harassment policy with respect to their employees, especially ROGERS.

51. That WHELAN SECURITY failed to maintain a harassment-free work environment by failing to take effective corrective action against ROGERS after WHELAN SECURITY became aware that ROGERS was engaging in unwelcome sexual conduct toward Plaintiff.

52. That as a result of these failures by WHELAN SECURITY, ROGERS used his authority as a supervisor to force his unwelcome sexual advances and offensive conduct upon Plaintiff.

53. That WHELAN SECURITY's treatment of Plaintiff was motivated by evil motive and intent, and was recklessly and callously indifferent to Plaintiff's federally protected rights.

54. That the sex discrimination and sexual harassment Plaintiff was subjected to by the hands of WHELAN SECURITY, their agents, representatives and employees was persistent in nature, unwelcome, extremely offensive, humiliating, and effective in creating a hostile and intimidating work environment for Plaintiff.

55. That said continuous and persistent sex discrimination and sexual harassment adversely affected the terms and conditions of Plaintiff's employment with WHELAN SECURITY.

56. That as a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered the indignity of discrimination, the invasion of her right to be free from discrimination, and great humiliation which has manifested in physical illnesses and emotional stress on the relationships between Plaintiff and her friends, family, and colleagues.

57. That as a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered extreme mental anguish, outrage, severe anxiety about her future and her ability to support herself, shameful embarrassment among her friends, colleagues, and co-workers, damage to her reputation, disruption of her personal life, and loss of enjoyment of the ordinary pleasures of life.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, TUCKER, respectfully requests this Court to provide the following equitable and legal remedies:

    a. Advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way.

    b. Order a permanent injunction prohibiting Defendants from further acts of sexual discrimination and sexual harassment.

    c. Award Plaintiff, TUCKER, all costs of litigation, including reasonable attorneys' fees and expert fees and expenses.

    d. Award Plaintiff, TUCKER, a judgment against Defendants for reinstatement, front pay, backpay and other compensatory damages.

    e. Award Plaintiff prejudgment interest.

    f. Grant judgment against Defendants for punitive damages for willful and wanton conduct.

    g. Enter an order requiring Defendants to implement effective steps to eliminate sex discrimination and sexual harassment from Defendants' organizations.

    h. Grant such other and further relief as this Court deems just and proper.

## **COUNT II**
## **RETALIATORY DISCIPLINE, HARASSMENT, DENIAL OF OVERTIME AND INFERIOR TERMS AND CONDITIONS OF EMPLOYMENT DIRECTED AT WHELAN SECURITY COMPANY AND WHELAN SECURITY OF ILLINOIS, INC.**

58. Plaintiff incorporates the preceding paragraphs by reference here.

59. That Plaintiff rejected ROGERS' sexual advances and complained about his conduct to Defendants' management employees.

60. That thereafter, Plaintiff was subjected to inferior treatment in the various terms and conditions of employment.

61. That as a result of Plaintiff's opposition of sexual harassment, she was issued false and unfounded disciplinary notices.

62. That as further result of Plaintiff's opposition of sexual harassment, she was subjected to daily criticisms, harassment, ridicule and such other humiliating treatment in the hands of ROGERS and his friends and acquaintances.

63. That as further result of Plaintiff's opposition of sexual harassment, Plaintiff was subjected to unequal and inferior treatment with respect to the assignment of lucrative overtime hours.

64. The adverse actions stated above followed Plaintiff's protected activity within such a period of time as to raise an inference of retaliatory motivation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, TUCKER, respectfully requests this Court to provide the following equitable and legal remedies:

- a. Advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way.

- b. Order a permanent injunction prohibiting Defendants from further acts of sexual discrimination and sexual harassment.

- c. Award Plaintiff, TUCKER, all costs of litigation, including reasonable attorneys' fees and expert fees and expenses.

- d. Award Plaintiff, TUCKER, a judgment against Defendants for reinstatement, front pay, backpay and other compensatory damages.

- e. Award Plaintiff prejudgment interest.

- f. Grant judgment against Defendants for punitive damages for willful and wanton conduct.

- g. Enter an order requiring Defendants to implement effective steps to eliminate sex discrimination and sexual harassment from Defendants' organizations.
- h. Grant such other and further relief as this Court deems just and proper.

## COUNT III
## COMPLAINT OF IDA TUCKER FOR
## QUID PRO QUO SEXUAL HARASSMENT AND SEX DISCRIMINATION DIRECTED AT WHELAN SECURITY COMPANY AND WHELAN SECURITY OF ILLINOIS, INC.

65. Plaintiff incorporates the preceding paragraphs by reference here.

66. That ROGERS explicitly conditioned Plaintiff's enjoyment of the various terms, conditions, and benefits of employment on her submission to his sexual advances. Such terms and conditions of employment include her employment itself and other conditions.

67. That WHELAN SECURITY's conduct in subjecting Plaintiff to inferior terms and conditions of employment amounts to quid pro quo sexual harassment in violation of the law.

68. That as a further result of said harassing conduct, Plaintiff was adversely affected by the various tangible employment actions that she suffered at the hands of WHELAN SECURITY and its agents.

69. That Defendants are strictly liable for the conduct complained of as the Plaintiff suffered adverse employment action resulting directly from the harassment.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, TUCKER, respectfully requests this Court to provide the following equitable and legal remedies:

a. Advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way.

b. Order a permanent injunction prohibiting Defendants from further acts of sexual discrimination and sexual harassment.

c. Award Plaintiff, TUCKER, all costs of litigation, including reasonable attorneys' fees and expert fees and expenses.

d. Award Plaintiff, TUCKER, a judgment against Defendants for reinstatement, front pay, backpay and other compensatory damages.

e. Award Plaintiff prejudgment interest.

f. Grant judgment against Defendants for punitive damages for willful and wanton conduct.

g.  Enter an order requiring Defendants to implement effective steps to eliminate sex discrimination and sexual harassment from Defendants' organizations.

h.  Grant such other and further relief as this Court deems just and proper.

**COUNT IV**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**DIRECTED AT FRED ROGERS**

70. Plaintiff incorporates the preceding paragraphs by reference here.

71. That on or around June 23, 2006, ROGERS said to Plaintiff, "I got a picture to show you." ROGERS then proceeded to show Plaintiff a picture in his cell phone that was a graphic picture of his penis.

72. That Plaintiff was shocked and disgusted and immediately looked away and responded, "Why didn't you warn me about that picture? I don't want to see that." ROGERS just smiled in response to Plaintiff's complaint.

73. That after ROGERS left work that day, he telephoned Plaintiff at work and asked, "Are you still speechless about my picture that I showed you?" Plaintiff told him, "I can't talk right now." and hung up the telephone.

74. That later that same night, ROGERS called Plaintiff again on her personal cell phone. This time, ROGERS asked Plaintiff, "What are you doing tonight? Do you drink?" Plaintiff told him that she was not interested in him and does not go to bars.

75. That on or around June 30, 2006, as Plaintiff was changing in the locker room, ROGERS stood close to the locker room door for an extended period of time. Plaintiff became uncomfortable by his presence because she did not want him to see her in her underwear. Plaintiff told ROGERS that he should leave that area because she had to change her clothes. He responded, "Yeah, I better go." and walked away.

76. That later that same day, as Plaintiff was walking through the dock area, ROGERS said to Plaintiff, "I want to see you in those underwear." Plaintiff did not respond to his offensive comment and walked away as fast as she could.

77. That also on June 30, 2006, Rogers sent the same graphic picture of his penis to Plaintiff's cell phone. After Plaintiff received this picture, she tried to avoid ROGERS as much as possible. Plaintiff became very scared of him after he sent the picture of his penis to Plaintiff's cell phone.

78. That after rejecting his advances and resisting the harassment of ROGERS and in retaliation for same, another employee and ROGERS' close friend, BROWN, began to ridicule and harass Plaintiff daily.

79. That on a daily basis throughout July and August of 2006, BROWN critiqued Plaintiff's work and ridiculed her in front of other employees to make it appear as though she were an unsatisfactory employee.

80. That however, BROWN was not Plaintiff's supervisor and his criticisms were fabricated and inappropriate.

81. That BROWN's conduct was designed to construct a difficult and intolerable working environment for Plaintiff.

82. That in July of 2006 and August of 2006, Plaintiff complained to ROGERS numerous times about BROWN's daily ridicule and treatment. ROGERS never investigated Plaintiff's allegations and complaints and said harassment continued to escalate.

83. That, in fact, whenever Plaintiff complained to ROGERS about BROWN, ROGERS just yelled at Plaintiff, "You need to work the problem out with Lenny yourself!"

84. That ROGERS intentionally inflicted severe emotional distress and mental anguish on TUCKER.

85. That Defendant has acted willfully and intentionally in that he knew that TUCKER would suffer and did suffered extreme emotional and physical distress as a result of the Defendant's extreme, oppressive and unreasonable conduct.

86. That Defendants' conduct toward TUCKER amounts to intentional infliction of emotional distress because said conduct was extreme and outrageous and beyond

the bounds of moral decency that no reasonable person could be expected to endure it.

87. That as a result, TUCKER has suffered and continues to suffer severe emotional distress, fright, physical illnesses, mental anguish, humiliation, and embarrassment.

## **PRAYER FOR RELIEF**

WHEREFORE, TUCKER respectfully requests that the Court provide the following equitable and legal relief:

    a. Award TUCKER a judgment against ROGERS for compensatory and punitive damages.

    b. Enter an order granting TUCKER reasonable compensation for the severe emotional distress, fright, humiliation, embarrassment, and physical illnesses suffered by TUCKER.

    c. Grant TUCKER such other and further relief as this court deems just and proper.

Respectfully Submitted,
Ida Tucker,

By:    s/ Uche O. Asonye
      One of Plaintiff's Attorneys

Uche O. Asonye- 06209522
Mark Pando - 6283683
Scott Fanning - 6292790
Asonye & Associates
11 South LaSalle Street, Suite 2140
Chicago, Illinois 60603
(312) 795-9110
(312) 795-9114 (f)

## **JURY DEMAND**

NOW COMES the Plaintiff by her undersigned attorney, and demands a trial by jury in the above entitled cause of action.

                          Respectfully Submitted,
                          Ida Tucker,

                          By:    s/ Uche O. Asonye
                               One of Plaintiff's Attorneys

Uche O. Asonye- 06209522
Mark Pando - 6283683
Scott Fanning - 6292790
Asonye & Associates
11 South LaSalle Street, Suite 2140
Chicago, Illinois 60603
(312) 795-9110
(312) 795-9114 (f)