# EXHIBIT H

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IDA TUCKER, )<br><br>Plaintiff, )<br><br>v. )<br><br>WHELAN SECURITY OF ILLINOIS, INC., )<br>WHELAN SECURITY COMPANY, and )<br>FRED ROGERS )<br><br>Defendants. ) | CASE NO. 1:07-cv-6449<br><br>JUDGE ANDERSEN |

## DEFENDANTS WHELAN SECURITY OF ILLINOIS, INC. AND WHELAN SECURITY COMPANY'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S FIRST AMENDED COMPLAINT

WHELAN SECURITY OF ILLINOIS, INC. and WHELAN SECURITY COMPANY ("Whelan Defendants"), for their Answer and Affirmative Defenses in response to Counts I, II and III of Plaintiff's First Amended Complaint, state as follows:[1]

As an initial matter, Plaintiff has included an improper party as a defendant. Plaintiff was employed by Whelan Security of Illinois, Inc., and not by Whelan Security Company. The naming of Whelan Security Company as a defendant is inaccurate and confusing.

## NATURE OF THE CASE

1.     The cause of action for Plaintiff arises under Title VII of the Civil Rights Act, 42 U.S.C. section 2000e, as amended.

**ANSWER:**

Whelan Defendants admit that certain Counts of Plaintiff's First Amended Complaint purport to state an action pursuant to Title VII of the Civil Rights Act of 1964. Whelan Defendants deny each and every remaining allegation contained in Paragraph 1.

---

[1] Count IV of Plaintiff's First Amended Complaint is directed against Defendant Fred Rogers and not directed against Whelan Defendants. Further, counsel for Whelan Defendants does not represent Defendant Fred Rogers. Accordingly, no response to the allegations contained in Count IV is made by the Whelan Defendants.

2.      This court has jurisdiction over this matter pursuant to 42 U.S.C. section 2000e, 28 U.S.C. Paragraph 1331, and 28 U.S.C. 1367.

**ANSWER:**

Whelan Defendants admit the allegations contained in Paragraph 2.

## JURISDICTION AND VENUE

3.      Venue in the Northern District of Illinois is proper.  The claim for relief arose in this state as required by 42 U.S.C. section 2000e.

**ANSWER:**

Whelan Defendants admit the allegations contained in Paragraph 3.

4.      All conditions precedent have been fulfilled by Plaintiff, including the filing of a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") of the United States Government, and a receipt of a Right-to-Sue Letter from the EEOC, (EEOC Charge and Right-to-Sue Letter attached as Exhibit A).

**ANSWER:**

On information and belief, Whelan Defendants admit that Plaintiff filed a Charge of

Discrimination with the EEOC and received of a Right-to-Sue Letter from the EEOC.  Whelan

Defendants deny each and every remaining allegation contained in Paragraph 4.

## PARTIES

5.      Plaintiff is female and a resident of the State of Illinois.

**ANSWER:**

Whelan Defendants admit that Plaintiff is a female, and that she was a resident of the State of

Illinois during her employment with Whelan Security of Illinois, Inc.  Whelan Defendants lack

information concerning whether Plaintiff currently is a resident of the State of Illinois, and

therefore deny the remainder of Paragraph 5.

6.      Defendant, WHELAN SECURITY OF ILLINOIS, INC. is duly registered to conduct business in the State of Illinois.

**ANSWER:**

Whelan Defendants admit the allegations contained in Paragraph 6.


7.      At all times pertinent hereto, Defendant, WHELAN SECURITY OF ILLINOIS, INC. has engaged in an industry affecting commerce and has had fifteen (15) or more employees for each working day in each of the twenty (20) or more calendar weeks in the current or preceding calendar year.

**ANSWER:**

Whelan Defendants admit that Whelan Security of Illinois, Inc. is engaged in an industry

affecting commerce and has had fifteen (15) or more employees for each working day in each of

the twenty (20) or more calendar weeks in the current or preceding calendar year.  Whelan

Defendants deny each and every remaining allegation contained in Paragraph 7 of Plaintiff's

First Amended Complaint.


8.      Defendant, WHELAN SECURITY COMPANY, is duly registered to conduct business in the State of Illinois.

**ANSWER:**

Whelan Defendants admit the allegations contained in Paragraph 8.  Answering further, Whelan

Defendants state that Plaintiff was employed by Whelan Security of Illinois, Inc., and not

Whelan Security Company.

9.      At all times pertinent hereto, Defendant, WHELAN SECURITY COMPANY, has engaged in an industry affecting commerce and has had fifteen (15) or more employees for each working day in each of the twenty (20) or more calendar weeks in the current or preceding calendar year.

**ANSWER:**

Whelan Defendants admit that Whelan Security Company is engaged in an industry affecting commerce and has had fifteen (15) or more employees for each working day in each of the twenty (20) or more calendar weeks in the current or preceding calendar year. Whelan Defendants deny each and every remaining allegation contained in Paragraph 9 of Plaintiff's First Amended Complaint. Answering further, Whelan Defendants state that Whelan Security Company never employed Plaintiff, and Plaintiff's use of "Whelan Defendants" to define the two entities is inaccurate and confusing.

10. Defendant, FRED ROGERS ("ROGERS"), is a male and a resident of Illinois.

**ANSWER:**

Whelan Defendants admit that Rogers is a male, and that he was a resident of the State of Illinois during his employment with Whelan Security of Illinois, Inc. Whelan Defendants lack information concerning whether Rogers currently is a resident of the State of Illinois, and therefore deny the remainder of Paragraph 10.

11. That at all times relevant herein, ROGERS was employed by WHELAN SECURITY as a manager.

**ANSWER:**

Whelan Defendants deny each and every allegation contained in Paragraph 11 of Plaintiff's First Amended Complaint.

<u>**COUNT I**</u>

**SEXUAL HARASSMENT DIRECTED AT WHELAN SECURITY COMPANY AND WHELAN SECURITY OF ILLINOIS, INC.**

12. That Plaintiff is female and a resident of the State of Illinois.

**ANSWER:**

Whelan Defendants admit that Plaintiff is a female, and that she was a resident of the State of Illinois during her employment with Whelan Security of Illinois, Inc. Whelan Defendants lack information concerning whether Plaintiff currently is a resident of the State of Illinois, and therefore deny the remainder of Paragraph 12.

13.     That Plaintiff was hired by WHELAN SECURITY as a security officer on or about August 11, 2005.

**ANSWER:**

Whelan Defendants admit that Whelan Security of Illinois, Inc. hired Plaintiff as a Security Officer on or about August 11, 2005.  Whelan Defendants deny each and every remaining allegation in Paragraph 13 of the Complaint.

14.     That during her employment, Plaintiff was supervised by ROGERS.

**ANSWER:**

Whelan Defendants admit that Rogers was Tucker's site supervisor during certain portions of her employment.  Whelan Defendants deny each and every remaining allegation in Paragraph 14 of the Complaint.

15.     That in his position as a supervisor, ROGERS was a supervisory employee under Title VII.

**ANSWER:**

Whelan Defendants admit that Rogers was Tucker's site supervisor during certain portions of her employment.  Whelan Defendants deny each and every remaining allegation in Paragraph 15 of Plaintiff's First Amended Complaint.

16.     That Plaintiff was a satisfactory and conscientious employee who performed assigned tasks in an acceptable manner consistent with WHELAN SECURITY's standards and regulations.

**ANSWER:**

Whelan Defendants deny the allegations contained in Paragraph 16 of Plaintiff's First Amended

Complaint.


17.     That while employed by WHELAN SECURITY, from approximately mid-June 2006 and continuing, Plaintiff was subjected to debilitating sexual harassment, inferior, miserable, and illegal terms and conditions of employment because of her sex, female.

**ANSWER:**

Whelan Defendants deny the allegations contained in Paragraph 17 of Plaintiff's First Amended

Complaint.


18.     That on or around June 23, 2006, ROGERS said to Plaintiff, "I got a picture to show you."  ROGERS then proceeded to show Plaintiff a picture in his cell phone that was a graphic picture of his penis.

**ANSWER:**

Whelan Defendants admit that Fred Rogers ("Rogers") showed Plaintiff a picture of his penis

(the "picture").  Whelan Defendants are without sufficient information or knowledge with which

to form a belief as to the truth of the remaining allegations contained in Paragraph 18 of

Plaintiff's First Amended Complaint, and, therefore, deny the same.


19.     That Plaintiff was shocked and disgusted and immediately looked away and responded, "Why didn't you warn me about that picture?  I don't want to see that."  ROGERS just smiled in response to Plaintiff's complaint.

**ANSWER:**

Whelan Defendants deny that Plaintiff was "shocked and disgusted" by the picture.  Whelan

Defendants are without sufficient information or knowledge with which to form a belief as to the

truth of the remaining allegations contained in paragraph 19 of Plaintiff's First Amended

Complaint, and therefore, deny the same.


20.    That after ROGERS left work that day, he telephone Plaintiff at work and asked, "Are
you still speechless about my picture that I showed you?"  Plaintiff told him, "I can't talk right
now." and hung up the telephone.

**ANSWER:**

Whelan Defendants are without sufficient information or knowledge with which to form a belief

as to the truth of the allegations contained in Paragraph 20 of Plaintiff's First Amended

Complaint, and, therefore, deny the same.


21.    That later that same night, ROGERS called Plaintiff again on her personal cell phone.
This time, ROGERS asked Plaintiff, "What are you doing tonight?  Do you drink?"  Plaintiff told
him that she was not interested in him and does not go to bars.

**ANSWER:**

Whelan Defendants are without sufficient information or knowledge with which to form a belief

as to the truth of the allegations contained in Paragraph 21 of Plaintiff's First Amended

Complaint, and, therefore, deny the same.


22.    That on or about June 30, 2006, as Plaintiff was changing in the locker room, ROGERS
stood close to the locker room door for an extended period of time.  Plaintiff became
uncomfortable by his presence because she did not want him to see her in her underwear.
Plaintiff told ROGERS that he should leave that area because she had to change her clothes.  He
responded, "Yeah, I better go," And walked away.
**ANSWER:**

Whelan Defendants are without sufficient information or knowledge with which to form a belief

as to the truth of the allegations contained in Paragraph 22 of Plaintiff's First Amended

Complaint, and, therefore, deny the same.

23.     That later that same day, as Plaintiff was walking through the dock area, ROGERS said to Plaintiff, "I want to see you in those underwear."  Plaintiff did not respond to his offensive comment and walked away as fast as she could.

**ANSWER:**

Whelan Defendants are without sufficient information or knowledge with which to form a belief

as to the truth of the allegations contained in Paragraph 23 of Plaintiff's First Amended

Complaint, and, therefore, deny the same.

24.     That also on June 30, 2006, Rogers sent the same graphic picture of his penis to Plaintiff's cell phone.  After Plaintiff received this picture, she tried to avoid ROGERS as much as possible.  Plaintiff became very scared of him after he sent the picture of his penis to Plaintiff's cell phone.

**ANSWER:**

Whelan Defendants admit that Rogers sent the picture to Plaintiff's cell phone.  Whelan

Defendants deny that Plaintiff tried to avoid and was scared of Rogers.  Whelan Defendants are

without sufficient information or knowledge with which to form a belief as to the truth of the

remaining allegations contained in Paragraph 24 of Plaintiff's First Amended Complaint, and,

therefore, deny the same.

25.     That on or about August 17, 2006, Plaintiff called the human resources office and complained about ROGERS' harassment.  Plaintiff was advised to call MICHAEL SELDIN ("SELDIN").  Plaintiff then called SELDIN who directed Plaintiff to set up a meeting with ALVIN HARGROVE ("HARGROVE").  Plaintiff then set up a meeting with HARGROVE for the next day.

**ANSWER:**

Whelan Defendants admit that on or about August 17, 2006, Plaintiff called Whelan Security of

Illinois, Inc.'s office and spoke to Michael Seldin, Branch Manager.  Seldin referred the

complaint to Alvin Hargrove.  Answering further, Whelan Defendants admit that Hargrove met

with Plaintiff on August 18, 2006, and that Plaintiff's initial contact with Seldin had nothing to

do with Rogers' conduct.  Whelan Defendants deny the remaining allegations contained in Paragraph 25 of Plaintiff's First Amended Complaint.

26.    That on or about August 18, 2006, Plaintiff met with HARGROVE and told him about ROGERS' sexually offensive conduct and showed him the picture of ROGERS' penis that ROGERS had sent to her cell phone.

**ANSWER:**

Whelan Defendants admit that, on or about August 18, 2006, Plaintiff and Hargrove met, that Plaintiff eventually told Hargrove, after first raising other issues, that Rogers had sent her the picture and that during the August 18 meeting, Plaintiff showed the picture to Hargrove.  Whelan Defendants deny the remaining allegations contained in Paragraph 26 of Plaintiff's First Amended Complaint.

27.    That on or about August 21, 2006, Plaintiff spoke to HARGROVE again who stated that ROGERS admitted sending the picture to Plaintiff's cell phone.

**ANSWER:**

Whelan Defendants admit that, on August 21, 2006, Rogers admitted to Hargrove that he had showed the picture to Plaintiff and that he had subsequently sent the same picture to her cell phone.  Answering further, Whelan Defendants further state that on August 21, 2006, Rogers was suspended without pay, pending further investigation and that on August 24, 2006, Rogers was terminated from his employment with Whelan Defendants.  Whelan Defendants deny the remaining allegations contained in Paragraph 27 of Plaintiff's First Amended Complaint.

28.    That after rejecting his advances and resisting the harassment of ROGERS and in retaliation for same, another employee and ROGERS' close friend, LENNY BROWN ("BROWN"), began to ridicule and harass Plaintiff daily.

**ANSWER:**

Whelan Defendants deny the allegations contained in Paragraph 28 of Plaintiff's First Amended

Complaint.

29.     That on a daily basis throughout July and August of 2006, BROWN critiqued Plaintiff's work and ridiculed her in front of other employees to make it appear as though she were an unsatisfactory employee.

**ANSWER:**

Whelan Defendants deny the allegations contained in Paragraph 29 of Plaintiff's First Amended

Complaint.

30.     That however, BROWN was not Plaintiff's supervisor and his criticisms were fabricated and inappropriate.

**ANSWER:**

Whelan Defendants admit that Brown was not Plaintiff's supervisor.  Whelan Defendants deny

the remaining allegations contained in Paragraph 30 of Plaintiff's First Amended Complaint.

31.     That BROWN's conduct was designed to construct a difficult and intolerable working environment for Plaintiff because she rejected ROGERS' sexual advances.

**ANSWER:**

Whelan Defendants deny the allegations contained in Paragraph 31 of Plaintiff's First Amended

Complaint.

32.     That in July of 2006 and August of 2006, Plaintiff complained to ROGERS numerous times about BROWN's daily ridicule and treatment.  ROGERS never investigated Plaintiff's allegations and complaints and said harassment continued to escalate.

**ANSWER:**

Whelan Defendants deny that Rogers failed to investigate Plaintiff's allegations regarding

Brown.  Answering further, Whelan Defendants state that Rogers approached Brown regarding

Plaintiff's complaints about Brown's concern she had left a door unsecured.  Whelan Defendants

are without sufficient information or knowledge with which to form a belief as to the truth of the remaining allegations contained in Paragraph 32 of Plaintiff's First Amended Complaint and, therefore, deny the same.

33.     That, in fact, whenever Plaintiff complained to ROGERS about BROWN, ROGERS just yelled at Plaintiff, "You need to work the problem out with Lenny yourself!"

**ANSWER:**

Whelan Defendants are without sufficient information or knowledge with which to form a belief as to the truth of the allegations contained in Paragraph 33 of Plaintiff's First Amended Complaint and, therefore, deny the same.

34.     That on or around August 16, 2006, Plaintiff complained to ROGERS again about BROWN's conduct toward her.  In response, ROGERS gave Plaintiff a copy of the anti-harassment policy and asked Plaintiff to sign it.  Plaintiff did so.

**ANSWER:**

Whelan Defendants admit that Rogers gave Plaintiff an additional copy of Defendant Whelan Security of Illinois, Inc.'s anti-harassment policy and asked her to sign it.  Whelan Defendants further state that Rogers gave the policy to Plaintiff by a directive from Hargrove because Hargrove wanted Plaintiff to have a copy of the policy when he discussed her complaints with him.  Whelan Defendants are without sufficient information or knowledge with which to form a belief as to the truth of the remaining allegations contained in Paragraph 34 of Plaintiff's First Amended Complaint and, therefore, deny the same.

35.     That this was the first time that Plaintiff was given a copy of the anti-harassment policy.

**ANSWER:**

11

Whelan Defendants deny the allegations contained in Paragraph 35 of Plaintiff's First Amended

Complaint.

36.     That after Plaintiff signed the harassment policy, later that day, Plaintiff was issued two disciplinary notices.  The first one claimed that a couple of days earlier Plaintiff had come 1 ½ hours late to a training meeting.

**ANSWER:**

Whelan Defendants admit that Plaintiff was written-up twice on August 16, 2006, once for being

1.5 hours late to a training meeting and, separately, for failing to properly brief Brown when he

relieved her shift.  Whelan Defendants deny the remaining allegations contained in Paragraph 36

of Plaintiff's First Amended Complaint.

37.     That however, BROWN and ROBERT TOSCANO did not attend the training meeting at all, but were not disciplined.

**ANSWER:**

Whelan Defendants deny the allegations contained in Paragraph 37 of Plaintiff's First Amended

Complaint.  Answering further, Whelan Defendants state that Brown and Toscano were excused

from that particular training session and attended a subsequent session.

38.     That the second disciplinary notice was given to Plaintiff for allegedly "Failing to properly brief BROWN" before his shift started.  This allegation was entirely fabricated because Plaintiff always fully briefed BROWN before his shift.

**ANSWER:**

Whelan Defendants admit that Plaintiff was written-up twice on August 16, 2006, once for being

1.5 hours late to a training meeting and, separately, for failing to properly brief Brown when he

relieved her shift.  Whelan Defendants deny the remaining allegations contained in Paragraph 38

of Plaintiff's First Amended Complaint.

39.     That the disciplinary notices issued to Plaintiff were based on false accusations and
fabricated to further harass and retaliate against Plaintiff for rejection ROGERS' sexual advances
and complaining about his conduct, and to construct an intolerable work environment to force
Plaintiff to resign her employment.

**ANSWER:**

Whelan Defendants deny the allegations contained in Paragraph 39 of Plaintiff's First Amended

Complaint.


40.     That when Plaintiff met with HARGROVE on August 18, 2006, Plaintiff also told him
that BROWN and ROGERS were retaliating against her for rejecting ROGERS' sexual advances
and sexually offensive conduct.

**ANSWER:**

Whelan Defendants deny the allegations contained in Paragraph 40 of Plaintiff's First Amended

Complaint.


41.     That on August 19, 2006, Plaintiff asked ROGERS if she could work some overtime
hours.  ROGERS then asked Plaintiff, "Well what do you need to take overtime for?  What is
your reason for wanting to work overtime?  I have to approve it."

**ANSWER:**

Whelan Defendants are without sufficient information or knowledge with which to form a belief

as to the truth of the allegations contained in Paragraph 41 of Plaintiff's First Amended

Complaint and, therefore, deny the same.


42.     That ROGER's conduct was designed to retaliate, harass and humiliate Plaintiff.
**ANSWER:**

Whelan Defendants deny the allegations contained in Paragraph 42 of Plaintiff's First Amended

Complaint.

43.    That ultimately and as a result of her complaint of sexual harassment, Plaintiff was transferred, suspended and demoted, thus placing her in a position in which she was worse off for having complained.

**ANSWER:**

Whelan Defendants deny the allegations contained in Paragraph 43 of Plaintiff's First Amended

Complaint.

44.    That WHELAN SECURITY's response to Plaintiff's complaint of sexual harassment is per se negligent because said response had the effect of placing Plaintiff in an inferior position thereafter.

**ANSWER:**

Whelan Defendants deny the allegations contained in Paragraph 44 of Plaintiff's First Amended

Complaint.

45.    That WHELAN SECURITY failed to take reasonable corrective action to prevent the harassment Plaintiff suffered as a result of ROGERS' conduct.

**ANSWER:**

Whelan Defendants deny the allegations contained in Paragraph 45 of Plaintiff's First Amended

Complaint.  Answering further, Whelan Defendants state that Plaintiff failed to report Rogers'

conduct until almost two months after it occurred.  Defendant Whelan Security of Illinois, Inc.

immediately suspended Rogers after learning of Plaintiff's accusations and terminated Rogers

shortly after investigating Plaintiff's allegations.

46.    That WHELAN SECURITY could have prevented said sex discrimination if it had implemented an effective anti-sex discrimination policy.

**ANSWER:**

Whelan Defendants deny the allegations in Paragraph 46 of Plaintiff's First Amended

Complaint.  Answering further, Whelan Defendants state that Plaintiff failed to report Rogers'

conduct until almost two months after it occurred. Whelan Defendants maintain an effective anti-discrimination policy as illustrated by the fact that as soon as Plaintiff complained, Defendant Whelan Security of Illinois, Inc. immediately investigated Plaintiff's allegations; Defendant Whelan Security of Illinois, Inc. suspended Rogers; and Defendant Whelan Security of Illinois, Inc. terminated Rogers shortly after the investigation of Plaintiff's allegations.

47.     That WHELAN SECURITY could have prevented said sexual harassment if it had implemented an effective anti-sexual harassment policy.

**ANSWER:**

Whelan Defendants deny the allegations in Paragraph 47 of Plaintiff's First Amended Complaint. Answering further, Whelan Defendants state that Plaintiff failed to report Rogers' conduct until almost two months after it occurred. Whelan Defendants maintain an effective anti-harassment policy as illustrated by the fact that as soon as Plaintiff complained, Defendant Whelan Security of Illinois, Inc. immediately investigated Plaintiff's allegations; Defendant Whelan Security of Illinois, Inc. suspended Rogers; and Defendant Whelan Security of Illinois, Inc. terminated Rogers shortly after the investigation of Plaintiff's allegations.

48.     That WHELAN SECURITY condoned sexual harassment and failed to maintain a harassment-free work environment by failing to provide adequate training, counseling, and instructions to their employees and officers, especially ROGERS, with respect to sexual harassment of female employees.

**ANSWER:**

Whelan Defendants deny the allegations contained in Paragraph 48 of Plaintiff's First Amended Complaint.

49.     That WHELAN SECURITY condoned sexual harassment and failed to maintain a harassment-free work environment by failing to employ an effective anti-sexual harassment policy with respect to their employees, especially ROGERS.

15

**ANSWER:**

Whelan Defendants deny the allegations contained in Paragraph 49 of Plaintiff's First Amended

Complaint.


50.     That WHELAN SECURITY failed to maintain a harassment-free work environment by failing to take effective corrective action against ROGERS after WHELAN SECURITY became aware that ROGERS was engaging in unwelcome sexual conduct toward Plaintiff.

**ANSWER:**

Whelan Defendants deny the allegations contained in Paragraph 50 of Plaintiff's First Amended

Complaint.   Answering further, Defendant Whelan Security of Illinois, Inc. immediately

suspended Rogers after learning of Plaintiff's accusations and terminated Rogers shortly after it

investigated Plaintiff's allegations.


51.     That as a result of these failures by WHELAN SECURITY, ROGERS used his authority as a supervisor to force his unwelcome sexual advances and offensive conduct upon Plaintiff.

**ANSWER:**

Whelan Defendants deny the allegations contained in Paragraph 51 of Plaintiff's First Amended

Complaint.


52.     That WHELAN SECURITY's treatment of Plaintiff was motivated by evil motive and intent, and was recklessly and callously indifferent to Plaintiff's federally protected rights.

**ANSWER:**

Whelan Defendants deny the allegations contained in Paragraph 52 of Plaintiff's First Amended

Complaint.


53.     That the sex discrimination and sexual harassment Plaintiff was subjected to by the hands of WHELAN SECURITY, their agents, representatives and employees was persistent in nature, unwelcome, extremely offensive, humiliating, and effective in creating a hostile and intimidating work environment for Plaintiff.

**ANSWER:**

Whelan Defendants deny the allegations contained in Paragraph 53 of Plaintiff's First Amended

Complaint.

54.     That said continuous and persistent sex discrimination and sexual harassment adversely affected the terms and conditions of Plaintiff's employment with WHELAN SECURITY.

**ANSWER:**

Whelan Defendants deny the allegations contained in Paragraph 54 of Plaintiff's First Amended

Complaint.

55.     That as a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered the indignity of discrimination, the invasion of her right to be free from discrimination, and great humiliation which has manifested in physical illnesses and emotional stress on the relationships between Plaintiff and her friends, family, and colleagues.

**ANSWER:**

Whelan Defendants deny the allegations contained in Paragraph 55 of Plaintiff's First Amended

Complaint.

56.     That as a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered extreme mental anguish, outrage, severe anxiety about her future and her ability to support herself, shameful embarrassment among her friends, colleagues, and co-workers, damage to her reputation, disruption of her personal life, and loss of enjoyment of the ordinary pleasures of life.

**ANSWER:**

Whelan Defendants deny the allegations contained in Paragraph 56 of Plaintiff's First Amended

Complaint.

Whelan Defendants deny that Plaintiff is entitled to the relief requested in Paragraphs (a),

(b), (c), (d), (e), (f), (g), and (h) of Count I and in Plaintiff's prayer for relief.

WHEREFORE, having fully answered Count I of Plaintiff's First Amended Complaint,

Whelan Defendants pray that Plaintiff's First Amended Complaint be dismissed with prejudice and

for such other and further relief as the Court may deem just and proper under the circumstances.

## COUNT II

### RETALIATORY DISCIPLINE, HARASSMENT, DENIAL OF OVERTIME AND INFERIOR TERMS AND CONDITIONS OF EMPLOYMENT DIRECTED AT WHELAN SECURITY COMPANY AND WHELAN SECURITY OF ILLINOIS, INC.

57.     Plaintiff incorporates the preceding paragraphs by reference here.

**ANSWER:**

Whelan Defendants incorporate their preceding responses to each paragraph of Plaintiff's First

Amended Complaint by reference here.

58.     That Plaintiff rejected ROGERS' sexual advances and complained about his conduct to
Defendants' management employees.

**ANSWER:**

Whelan Defendants are without sufficient knowledge or information with which to form a belief

as to whether or not there were sexual advances and therefore, deny the same.   Whelan

Defendants are without sufficient knowledge or information with which to form a belief as to

whether or not Plaintiff rejected the alleged sexual advances of Rogers, and therefore deny the

same.  Whelan Defendants admit that eventually Plaintiff complained about a picture Rogers sent

her.  Whelan Defendants deny the remaining allegations of Paragraph 58 of Plaintiff's First

Amended Complaint.  Answering further, Whelan Defendants state that Plaintiff failed to report

Rogers' conduct until almost two months after it occurred.

59.     That thereafter, Plaintiff was subjected to inferior treatment in the various terms and
conditions of employment.

**ANSWER:**

Whelan Defendants deny the allegations contained in Paragraph 59 of Plaintiff's First Amended

Complaint.


60.    That as a result of Plaintiff's opposition of sexual harassment, she was issued false and unfounded disciplinary notices.

**ANSWER:**

Whelan Defendants deny the allegations contained in Paragraph 60 of Plaintiff's First Amended

Complaint.  Answering further, Whelan Defendants state that Plaintiff was written-up twice on

August 16, 2006, once for being 1.5 hours late to a training meeting and, separately, for failing to

properly brief Brown when he relieved her shift.


61.    That as further result of Plaintiff's opposition of sexual harassment, she was subjected to daily criticisms, harassment, ridicule and such other humiliating treatment in the hands of ROGERS and his friends and acquaintances.

**ANSWER:**

Whelan Defendants deny the allegations contained in Paragraph 61 of Plaintiff's First Amended

Complaint.  Answering further, Whelan Defendants state that Plaintiff never complained of the

conduct alleged in Paragraph 61 of Plaintiff's First Amended Complaint.


62.    That as further result of Plaintiff's opposition of sexual harassment, Plaintiff was subjected to unequal and inferior treatment with respect to the assignment of lucrative overtime hours.

**ANSWER:**

Whelan Defendants deny the allegations contained in Paragraph 62 of Plaintiff's First Amended

Complaint.  Answering further, Whelan Defendants state that Plaintiff never complained of the

conduct alleged in Paragraph 62 of Plaintiff's First Amended Complaint.

63.     The adverse actions stated above followed Plaintiff's protected activity within such a period of time as to raise an inference of retaliatory motivation.

**ANSWER:**

Whelan Defendants deny the allegations contained in Paragraph 63 of Plaintiff's First Amended

Complaint.

Whelan Defendants deny that Plaintiff is entitled to the relief requested in Paragraphs (a),

(b), (c), (d), (e), (f), (g), and (h) of Count II and in Plaintiff's prayer for relief.

WHEREFORE, having fully answered Count II of Plaintiff's First Amended Complaint,

Whelan Defendants pray that Plaintiff's First Amended Complaint be dismissed with prejudice and

for such other and further relief as the Court may deem just and proper under the circumstances.

### COUNT III

**COMPLAINT OF IDA TUCKER FOR QUID PRO QUO SEXUAL
HARASSMENT AND SEX DISCRIMINATION DIRECTED AT
WHELAN SECURITY COMPANY AND WHELAN SECURITY OF ILLINOIS, INC.**

64.     Plaintiff incorporates the preceding paragraphs by reference here.

**ANSWER:**

Whelan Defendants incorporate their preceding responses to each paragraph of Plaintiff's First

Amended Complaint by reference here.

65.     That ROGERS explicitly conditioned Plaintiff's enjoyment of the various terms, conditions, and benefits of employment on her submission to his sexual advances.  Such terms and conditions of employment include her employment itself and other conditions.

**ANSWER:**

Whelan Defendants deny the allegations contained in Paragraph 65 of Plaintiff's First Amended

Complaint.

66.    That WHELAN SECURITY'S conduct in subjecting Plaintiff to inferior terms and conditions of employment amounts to quid pro quo sexual harassment in violation of the law.

**ANSWER:**

Whelan Defendants deny the allegations contained in Paragraph 66 of Plaintiff's First Amended

Complaint.

67.    That as a further result of said harassing conduct, Plaintiff was adversely affected by the various tangible employment actions that she suffered at the hands of WHELAN SECURITY and its agents.

**ANSWER:**

Whelan Defendants deny the allegations contained in Paragraph 67 of Plaintiff's First Amended

Complaint.

68.    That Defendants are strictly liable for the conduct complained of as the Plaintiff suffered adverse employment action resulting directly from the harassment.

**ANSWER:**

Whelan Defendants deny the allegations contained in Paragraph 68 of Plaintiff's First Amended

Complaint.

Whelan Defendants deny that Plaintiff is entitled to the relief requested in Paragraphs (a),

(b), (c), (d), (e), (f), (g), and (h) of Count III and in Plaintiff's prayer for relief.

WHEREFORE, having fully answered Count III of Plaintiff's First Amended Complaint,

Whelan Defendants pray that Plaintiff's First Amended Complaint be dismissed with prejudice and

for such other and further relief as the Court may deem just and proper under the circumstances.

## **COUNT IV**

Count IV of Plaintiff's First Amended Complaint is directed against Defendant Fred

Rogers and not directed against Whelan Defendants.  Further, counsel for Whelan Defendants

does not represent Defendant Fred Rogers. Accordingly, no response to the allegations contained in Count IV is made by the Whelan Defendants.

## **AFFIRMATIVE DEFENSES**

1.     Whelan Defendants deny each and every allegation contained in Plaintiff's First Amended Complaint that has not been specifically admitted in the preceding paragraphs of this Answer.

2.     Plaintiff's First Amended Complaint fails to state any claim upon which relief may be granted.

3.     Plaintiff's First Amended Complaint should be dismissed because its allegations and claims are barred by the applicable statute of limitations.

4.     Plaintiff was not subjected to conduct that was sufficiently severe or pervasive to alter the conditions of her employment and create a hostile working environment.

5.     Plaintiff's First Amended Complaint should be dismissed because her allegations and claims are barred by the doctrine of laches.

6.     Plaintiff voluntarily abandoned her job on or about September 30, 2006.

7.     Whelan Defendants maintained, and continue to maintain, workplace policies with respect to equal employment opportunity and workplace harassment and retaliation.

8.     Whelan Defendants exercised reasonable care to prevent any alleged harassing or retaliatory conduct and to promptly correct and eliminate any such conduct when it might occur; further, Plaintiff failed to exercise reasonable care to take advantage of Whelan Defendants preventive and corrective safeguards and to otherwise prevent harm that could have been avoided.

9. Plaintiff failed to respond to opportunities to alter her work environment so that her alleged concerns could be addressed.

10. On information and belief, Plaintiff's claims are barred, in whole or in part, by Plaintiff's failure to mitigate any alleged damages.

11. Plaintiff's claims are barred by waiver and estoppel.

12. Plaintiff's allegations that Brown's conduct, and/or the conduct of any other employee or agent of Whelan Defendants, constructed a difficult and/or intolerable working environment for Plaintiff should be dismissed because Plaintiff failed to raise such claims in her Charge before the Illinois Department of Human Rights and the EEOC. Therefore any such allegations are beyond the scope of Plaintiff's Charge.

13. Plaintiff's allegations that as a result of the alleged sexual harassment, she was transferred, suspended, demoted or placed in an inferior or worse position should be dismissed because Plaintiff failed to raise such claims in her Charge before the Illinois Department of Human Rights and the EEOC. Therefore any such allegations are beyond the scope of Plaintiff's Charge.

14. Plaintiff's allegations that the conduct of Whelan Defendants, their agents, representatives and employees created a hostile and intimidating work environment should be dismissed because Plaintiff failed to raise such claims in her Charge before the Illinois Department of Human Rights and the EEOC. Therefore any such allegations are beyond the scope of Plaintiff's Charge.

15. Plaintiff's Count III should be dismissed because Plaintiff failed to raise such a claim in her Charge before the Illinois Department of Human Rights and the EEOC. Therefore any such allegations are beyond the scope of Plaintiff's Charge.

16.     Whelan Defendants currently have insufficient knowledge or information upon which to form a belief as to whether it may have additional, as yet unstated, defenses available. Whelan Defendants reserve the right to allege additional defenses if discovery indicates that additional defenses would be appropriate.

WHEREFORE, having fully answered the Complaint, Whelan Defendants pray that the Court dismiss Plaintiff's First Amended Complaint with prejudice at Plaintiff's cost, that the Court award Whelan Defendants their attorneys' fees and expenses incurred herein, and that the Court grant such other and further relief to Whelan Defendants as the Court may deem just and proper.

Respectfully submitted,

____/s/_Alisa B. Arnoff_____
Alisa B. Arnoff
IL ARDC No. 06197379
Scalambrino & Arnoff, LLP
One North LaSalle Street, Suite 1600
Chicago, Illinois   60602
(312) 629-0545 Telephone
(312) 629-0550 (Facsimile)
Email: aba@sacounsel.com

AND

Bradley G. Kafka
*Pro hac vice*
Tiffany B. Kieffer
*Pro hac vice*
GALLOP, JOHNSON & NEUMAN, L.C.
101 South Hanley, Suite 1700
St. Louis, Missouri  63105
(314) 615-6000 (Telephone)
(314) 615-6001 (Facsimile)
Email: bgkafka@gjn.com
Email: tbkieffer@gjn.com

Attorneys for Defendants Whelan Security of Illinois, Inc.
and Whelan Security Company